UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID E. DOHERTY, SR.,          :     CIVIL NO. **4:05-1249**
                                :
            Plaintiff           :     (Judge McClure)
                                :
     v.                         :     (Magistrate Judge Smyser)
                                :
JO ANNE B. BARNHART,            :
Commissioner of Social          :
Security,                       :
            Defendant           :
                                :


### REPORT AND RECOMMENDATION


     The plaintiff has brought this action under the authority

of 42 U.S.C.§ 405(g) to obtain judicial review of the decision

of the Commissioner of Social Security denying the plaintiff's

claims for disability insurance benefits (DIB) and supplemental

security income (SSI).


     The plaintiff applied for DIB and SSI on March 12, 2002,

alleging disability due to hepatitis C since February 8, 2002.

Tr. 174-76, 516-18, 119.  His applications were denied

initially.  Tr. 119, 126-29.  On August 13, 2002, the plaintiff

filed a request for a hearing.  Tr. 123.  Although the request

was not timely, the ALJ determined that there was good cause

for missing the deadline.  Tr. 23, 39-41, 124-25.  20 C.F.R. §§
404.933©), 416.1433©).


On March 20, 2003, the plaintiff and his girlfriend
testified at an administrative hearing.  Tr. 32-79.  A
vocational expert (VE) and a medical expert testified at a
supplemental hearing which was held on August 19, 2003.
Tr. 80-118.  On September 17, 2003, the administrative law
judge (ALJ) issued a decision denying the plaintiff's claims.
Tr. 20-31.  The plaintiff requested review from the Appeals
Council, which denied his request.  Tr. 542-48, 8-19.  Thus,
the ALJ's decision became the final decision of the
Commissioner.  42 U.S.C. § 405(g).  The plaintiff then
commenced this action for judicial review of the Commissioner's
final decision.  Doc. No. 1.


The plaintiff was forty-four-years old at the time of the
ALJ's decision.  Tr. 28.  He has a tenth-grade education and
past work experience as a carpenter, a drywall laborer, and
most recently, a forklift operator.  Tr. 47-51.  The
plaintiff's employer placed him on medical leave on February 8,
2002; he has not worked since.  Tr. 42-43.

2

The plaintiff was diagnosed with hepatitis C in January 2001.
Tr. 197.  From July 2001 to July 2002, the plaintiff received
interferon therapy while under the care of David N. Speranza,
M.D.  Records from Dr. Speranza show that the therapy was
effective, but the plaintiff experienced a number of side
effects, including depression, for which he was given anti-
depressant medication, arthralgia and myalgia, insomnia, vision
impairment, tinnitus, fatigue, nausea, vomiting, and migraine
headaches.  Tr.  318-49, 359-68.   After his interferon therapy
ended, the plaintiff continued to seek treatment for his
headaches, diagnosed as migraines, from his family physicians[1]
and from neurologists Allen E. Tyler, M.D., and Scott Cherry,
M.D.  Tr. 245-85, 391-418, 441, 457-49, 507-08.

The Commissioner has promulgated regulations creating a
five-step process to determine whether a claimant is disabled.
The ALJ must sequentially determine:  (1) whether the claimant
is engaged in substantial gainful activity; (2) whether the
claimant has a severe impairment; (3) whether the claimant's
impairment meets or equals a listed impairment; (4) whether the

---

[1] The plaintiff's family physicians were first Roger L.
Harcourt, M.D., and then Nicole Post, M.D., who assumed Mr.
Doherty's care after Dr. Harcourt retired in December 2002.  Tr. R.
245-75, 373-85, 398-418, 78, 391-96, 441, 489-95.

claimant's impairment prevents the applicant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.

In this case, the ALJ determined that (1) the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date; (2) the plaintiff's headaches and hepatitis C are severe; (3) but do not meet or medically equal any listed impairment(s); (4) the plaintiff is unable to perform his past relevant work; but (5) has the residual functional capacity (RFC) to perform a significant range of light work.  Tr. 24-28.  The VE gave examples of such jobs (i.e. packer and dispatcher) and testified as to the numbers in which they exist in the regional and national economies. Tr. 29, 113.  *See* 20 C.F.R. §§ 404.1560, 416.960 (requiring the Commissioner to demonstrate that work the claimant can perform exists in significant numbers in the national economy). Because the plaintiff was found to be able to perform work that exists in significant numbers in the national economy, the ALJ determined that the plaintiff is not disabled.  Tr. 23.  20 C.F.R. §§ 404.1520(g), 416.920(g).

We review the Commissioner's decision to determine whether it is supported by substantial evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707.

5

The plaintiff first argues that the ALJ erred in not evaluating the testimony of his girlfriend, Denise Smeltzer, presented under oath at the hearing of March 20, 2003.  Tr. 74-79.  *Burnett v. Commissioner,* 220 F.3d 112, 122 (3d. Cir. 2000), requires that an ALJ state some reason for disregarding a lay witness' testimony when that testimony could have bolstered a claimant's credibility.  *Burnett*, 220 F.3d at 122. This requirement is rooted in the basic *Cotter* requirement that the decision be explained  Because, in the present case, the ALJ found the plaintiff not to be credible, she should have stated how she evaluated Ms. Smeltzer's corroborative testimony.  Tr. 25*.  Burnett*, 220 F.3d at 122.

For example, the plaintiff testified that he blacks out at least three or four times a week.  Tr. 63-64.  The ALJ questioned Ms. Smeltzer about this, and she testified that she helps the plaintiff on a daily basis, she stated that he is on a lot of medications and becomes confused.  She stated that he is motivated to do things that a man of his age would generally be able to do -carry groceries, mow the yard- and that he has a hard time accepting that he can not.  She stated that she has seen him become lightheaded, change color, and lose his balance.  Tr. 74-77.  Because the ALJ did not discuss Ms.

6

Smeltzer's testimony, we cannot be sure how the ALJ evaluated the plaintiff's testimony regarding these "blackouts" and thus determine whether substantial evidence supports the ALJ's determination that the plaintiff was not credible.  Tr. 25.

Next, the plaintiff argues that the ALJ failed to address several medical reports which, he asserts, support his claims. These include David T. Francois, M.D.'s notation regarding a possible basis for the plaintiff's arthralgia problems, as well as reports concerning the plaintiff's sinusitis, vision problems, tinnitus, and migraine headaches.  Tr. 455, 391, 444-45, 463-71, 319, 322, 325-27, 329-32, 509-11.

As the plaintiff points out, the ALJ discussed only that medical evidence which supported the ALJ's conclusion that the plaintiff was not credible regarding the intensity, duration, and limiting effects of his symptoms.  Tr. 25-26.  For example, the ALJ notes that a February 18, 2002 head CT scan was unremarkable.  Tr. 25, 324.  Yet the ALJ failed to resolve this report with other evidence in the record which supported the plaintiff's allegations regarding the limiting effects of his headaches.  For instance, even after the negative head CT, the plaintiff continued to complain of severe headaches and nausea, leading Dr. Speranza to halt the plaintiff's interferon therapy

for a few weeks in February 2002.  Tr. 321-27.  The medical
expert who testified at the supplemental hearing, Richard
Menin, M.D., noted that while the plaintiff's flu-like symptoms
improved after his hepatitis C treatment ended, his headaches
remained.  Tr. 88-89.  Dr. Menin stated that although he could
not evaluate the plaintiff's symptoms, the fact that the
plaintiff had sought evaluation from several physicians
indicated that the headaches "dominat[ed] his life a good
deal."  Tr. 90.

As the Commissioner concedes, the ALJ did not evaluate
each piece of relevant medical evidence and testimony in the
record.  Tr. 25-27.  Doc. 9 at 14-15.  The Commissioner
correctly notes that the ALJ did not need to do so as long as
her discussion of the medical evidence permits this court to
discern the basis of her decision.  *Fargnoli v. Massanari*, 247
F.3d 34, 42 (3d. Cir. 2001).  Here, it did not.

Several physicians treated the plaintiff over the course
of his interferon therapy, for both the therapy itself as well
as its various side effects.  Tr. 245-317, 318-49, 353-423,
428-49, 452-71, 473-508.  Yet the ALJ lumped all of this
medical evidence together in one paragraph in a discussion we
find insufficient under *Fargnoli*, 247 F.3d at 42.  Tr. 25-26.

Particularly problematic was the ALJ's failure to distinguish the evidence from the plaintiff's treating family physicians, Roger L. Harcourt, M.D., and Nicole Post, M.D., from the stack of medical evidence, and evaluate their opinions under the appropriate regulations.  Tr. 25-26, 245-75, 373-85, 398-418, 78, 391-96, 441, 489-95.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Both provided the ALJ with opinions, which the ALJ did not separately discuss or weigh.  Tr. 27, 374-80, 391, 446-47, 472.

The ALJ simply assigned "little weight" to all of the "various opinions of disability," finding they were "either not supported by the medical findings, indicate that the [plaintiff] is 'temporarily' disabled for less than a 12-month period, are based on a one-time examination of the [plaintiff], or are inconsistent with the fact that the [plaintiff] improved with medication and therapy."[2]  Tr. 27.  This skimpy assessment leaves us to cobble together our own review of the medical evidence in order to try to discern which opinions the ALJ

---

[2]  Presumably, the ALJ's reference to an opinion that the plaintiff was temporarily disabled was that of Dr. Post, the plaintiff's treating physician, who opined on a Pennsylvania Department of Welfare form that the plaintiff was temporarily disabled from March 19, 2002 until December 31, 2003.  Tr. 27, 472. If this is the opinion that the ALJ rejected because it "indicate[d] that the plaintiff was 'temporarily disabled for less than a 12-month period," the ALJ's basis for the rejection is incorrect; the dates actually cover a twenty-month period.  Tr. 472.

rejected for which reasons.  Such an endeavor, however, is
beyond this court's reviewing role.  It is not up to us to
speculate as to how the ALJ assigned weight to the numerous
physicians and their opinions or to devise our own analysis of
the medical records.  *Fargnoli*, 247 F.3d at 44 n.7 (citing
*S.E.C. v. Chenery Corp.*, 318 U.S. 194, 196 (1947).

Finally, the plaintiff contends that the ALJ erred in
determining that the plaintiff had the residual functional
capacity (RFC) for a significant range of light work.  Tr.  28.
The ALJ gave "little weight" to "an assessment showing that the
claimant was not capable of working an 8-hour day" and another
"showing that the claimant was capable of sedentary work,"
finding them inconsistent with the medical findings.  Tr. 27.
Here again, the ALJ has failed to develop the record in way
that facilitates our review.  *Fargnoli*, 247 F.3d at 42.

The ALJ did not even acknowledge who provided the two RFC
assessments, much less note that they came from the plaintiff's
treating physicians, Drs. Harcourt and Post.  Tr. 27, 374-82,
446-47.  In doing so, the ALJ ignored that "[a] cardinal
principle guiding disability eligibility determinations is that
the ALJ accord treating physicians' reports great weight,
especially "when their opinions reflect expert judgment based

on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ((citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)(quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)).

On the basis of the foregoing, it is recommended that the appeal of the plaintiff be granted and this matter be remanded to the Commissioner for reconsideration of the testimony of Ms. Smeltzer, of the credibility of the plaintiff as to his symptoms and limitations, and of the medical evidence.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  February 9, 2006.